IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARL WAYNE REED, JR., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-3189 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

The petitioner, Carl Wayne Reed, Jr., seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2005 state felony conviction for aggravated robbery. The respondent moved for summary judgment, (Docket Entry No. 16), with a copy of the state court record. Reed has not filed a response. Based on careful consideration of the pleadings, the motion, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

**I.     Background**

Reed was charged with the first-degree felony offense of aggravated robbery, alleged to have occurred on June 16, 2004. (Cause Number 991288, 208th Judicial District Court, Harris County, Texas, Clerk's Record, Vol. I, p. 12). On November 3, 2004, Reed's counsel filed a motion to suppress statements Reed made during police interrogation while he was in custody. (Clerk's Record, Vol. I, pp. 21-24). On April 20, 2005, the trial court held a hearing on the motion to suppress and denied the motion the same day. (*Id*. at 24). Reed pleaded guilty. On April 20, 2005, the trial court, in keeping with the plea agreement, sentenced Reed to a fifteen-year prison term and

made an affirmative finding of a deadly weapon.  (*Id*. at 33-39, 43).  As part of the plea agreement, Reed agreed to testify against his codefendant in the aggravated robbery case.

On April 28, 2005, the trial court entered findings of fact and conclusions of law denying Reed's motion to suppress.  (*Id*. at 46-49).  On May 19, and 23, 2005, Reed moved for a new trial.  (*Id*. at 50-54, 58-62).  On May 25, 2005, the trial court denied the motion.  (*Id*. at 67).  The First Court of Appeals of Texas affirmed Reed's conviction on October 19, 2006.  *Reed v. State,* No. 01-05-00619-CR, 227 S.W.3d 111 (Tex. App. -- Houston [1st Dist.] 2006, pet. ref'd).  The Texas Court of Criminal Appeals refused Reed's petition for discretionary review on April 25, 2007.

With the assistance of counsel, Reed filed this federal petition on September 28, 2007.  Reed attacks the validity of his conviction on the ground that he was denied his Fifth Amendment right to counsel.  Reed asserts that during custodial interrogation after his arrest, a police detective obtained his confession after he had asked for counsel.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 2-3).

Reed's original petition raised both Fifth and Sixth Amendment claims.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 2).  The respondent moved to dismiss because the petition presented both exhausted and unexhausted claims.  (Docket Entry No. 7).  Reed then moved for leave to amend to remove the unexhausted Sixth Amendment claim.  (Docket Entry No. 11).  On July 23, 2008, this court granted Reed leave to file an amended petition raising only the Fifth Amendment claim.  (Docket Entry No. 13).  The respondent's motion for summary judgment followed.  The motion, and Reed's claim, are analyzed based on the record and the applicable law.

2

## II.    Background

The appellate court summarized the facts in the record, as follows:

> On the afternoon of June 16, 2004, appellant was arrested in
> Pasadena, Texas after robbing a clerk at a Cingular Wireless store at
> gunpoint.  Appellant was brought before a magistrate and read his
> rights.  He then was taken to a video room for interrogation by
> Sergeant K. Bonsal.  After turning on the video recorder, but before
> questioning appellant about the robbery, Sergeant Bonsal asked
> appellant whether he had understood his rights as the magistrate had
> read them to him; appellant responded he had.  Sergeant Bonsal then
> handed a sheet of paper to appellant listing his rights and asked him
> to read the first one aloud.  After demonstrating his ability to read to
> Sergeant Bonsal, appellant continued reading the rest to himself.  As
> he was reading, he asked Sergeant Bonsal, "I can get a lawyer if I
> want one, right?"  Sergeant Bonsal answered, "Yeah."  When
> appellant replied that he knew that he himself would have to make
> the call but that he did not have his lawyer's telephone number on
> him, Sergeant Bonsal offered him the use of a phone book and a
> phone. Appellant accepted, and appellant and Sergeant Bonsal
> stepped into the hall outside the video room.  Appellant's next words
> are indistinguishable, but Bonsal can be heard saying, "If you want
> to talk to him before you talk to me, that's up to you."  Appellant next
> asked if he could first call his dad and then his lawyer.  Sergeant
> Bonsal replied, "We can do that too.  What do you want to do?"
> Appellant said something in response as he came back into the video
> room and sat down, but it is indistinguishable.  Sergeant Bonsal then
> said, "Your lawyer's office is closed.  If you're gonna answer my
> questions, you need to sign here."  As he was saying this, appellant
> interjected, "I'm gonna answer your questions."  Appellant signed the
> waiver card and made several incriminating statements.
>
> A couple of months later, appellant filed a motion to suppress the
> videotaped statement,FN2 arguing that it was obtained in violation of
> his right to counsel.  The trial court held a hearing, at which Sergeant
> Bonsal and appellant testified.  The videotaped statement was also
> viewed by the court.  In his closing argument, appellant argued that
> his right to counsel had been violated and that he did not knowingly
> and intentionally waive his right to a lawyer.
>
> The trial court denied appellant's motion to suppress and made the
> following relevant findings of fact:

1.  Sergeant Bonsal, who is a peace officer and member of the Pasadena Police Department, who testified before this Court, is a credible and reliable person.  The Court believed his testimony.

2.  Carl Wayne Reed, who is the defendant and who testified before this Court is NOT a credible and reliable person.  This Court did NOT believe his testimony.
. . . .

8.  Kirk Bonsal was present when a Magistrate read the defendant his statutory warnings.

9.  Kirk Bonsal observed the defendant read his Miranda warnings.

10.  Kirk Bonsal advised the defendant of his right to remain silent.

11.  Kirk Bonsal advised the defendant that anything he said could be used against him.

12.  Kirk Bonsal advised the defendant of his right to have an attorney present prior to and during any questioning.

13.  Kirk Bonsal advised the defendant of his right to have an attorney appointed to advise him prior to and during any questioning.

14.  Kirk Bonsal advised the defendant of his right to terminate the interview at any time.

15.  The defendant acknowledged each and every one of these rights stating that he understood them.

16.  When asked if he agreed to waive his rights, the defendant asked if he could get a lawyer if he wanted.

17.  The recording clearly reflects that the defendant was told he could contact a lawyer and was offered a phone to use.

18.  The defendant appeared to call Kirby Taylor, who did not answer. Kirk Bonsal said his office was probably closed.

19.  The defendant said he would answer questions of Kirk Bonsal and agreed to waive his rights as evidenced by the video.

20.  The defendant was not beaten, coerced or threatened into giving his statement.

. . . .

23.  There is no evidence that the defendant was under the influence of narcotics or alcohol at the time of the statement, and his appearance and speech did not indicate he was under the influence of narcotics or alcohol.

24.  The defendant understood the process and did not appear to be suffering from any mental or physical impairment.

. . . .

26.  The defendant had ample mental capacity at the time of the statement to make the statement.

*Reed v. State,* No. 01-05-00619-CR, 227 S.W.3d 111, 113-14 (Tex. App. -- Houston [1st Dist.] 2006, pet. ref'd).

## III.    The Suppression Hearing

On November 3, 2004, Reed filed a motion to suppress the statements he made after his arrest on June 16, 2004.  He argued that his statements were inadmissible because they were made when a police officer, Sergeant K.W. Bonsal, continued interrogating him after he asked to have counsel present.  (Clerk's Record, Vol. I, pp. 21-24).  On April 20, 2005, the trial court held a suppression hearing.  (*Id*. at 75).  Reed and Sergeant Bonsal testified.  A videotape recording of Reed's statement and a copy of the statutory warnings he received were also admitted for the purpose of the hearing.  The record does not contain a transcript of the videotaped recording.

Sergeant Bonsal testified that he worked for the City of Pasadena Police Department.  On June 16, 2004, he responded to a report of a major traffic accident and possible aggravated robbery.  At the scene, Sergeant Bonsal saw that a vehicle had struck a brick wall.  The driver was taken away on a stretcher and the passenger, Reed, was in a police car.  (*Id*. at 10, 22).  Reed appeared coherent

5

and did not appear to have blacked out.  He refused medical attention one time at the scene and again during interrogation at the police station.  (*Id*. at 24).

Sergeant Bonsal testified that Delano Richardson, an eyewitness, reported that he had seen Reed and another man rob a Cingular wireless store immediately before the accident.  (Reporter's Record, pp. 22-23).  Police officers recovered from the vehicle at the scene several items identified as stolen from the store.  (*Id*. at 23).  Sergeant Bonsal determined that he had probable cause to arrest Reed for aggravated robbery and took him into custody.  (*Id*. at 23).

At 5:15 p.m., a magistrate judge read Reed his *Miranda* rights while he was in a holding cell. (*Id*. at 15).  Sergeant Bonsal was present when the magistrate judge read Reed his *Miranda* warnings at the jail.  The warnings included that Reed had the right to remain silent; any statement he made could be used against him; he had the right to have a lawyer present during any questioning; if he was unable to employ a lawyer, one would be appointed to advise him before and during any questioning; and he had the right to end the interview at any time.  (*Id*. at 10, 18-20; State's Exhibit 1).  Sergeant Bonsal saw Reed initial each warning and sign the bottom of the form, waiving his rights.  (*Id*. at 29-30).  At the suppression hearing, the prosecutor submitted a copy of a blank form entitled "Pasadena Police Department, Your Rights," as State's Exhibit 4.  The document included sections entitled "Warnings" and "Waiver of Rights."  The copy of the form Reed had initialed and signed on June 16, 2004, was not available because the Central Records Division was unable to locate it.  (*Id*. at 32).  Sergeant Bonsal explained that State's Exhibit 4 was the same form Reed read, initialed, and signed.  (*Id*. at 32-34).

After Reed received the warnings, Sergeant Bonsal placed him in an interview room in the Pasadena Police Department.  A videotape camera recorded what occurred.  Sergeant Bonsal did not

tell Reed that their conversation was being videotaped.  (*Id.* at 7).  Sergeant Bonsal testified that the videotaped statement reflected everything that took place between himself and Reed.  (Reporter's Record, pp. 14, 17).  Sergeant Bonsal testified that on entering the interview room, he asked Reed to read the first *Miranda* warning listed on the Pasadena Police Department warning and waiver of rights form.  Sergeant Bonsal wanted to assure himself that Reed could in fact read.  Reed then continued to read the remaining warnings silently.  (Reporter's Record, pp. 9-10).  While reading the form, Reed asked "[c]an I get a lawyer if I want one?"  Sergeant Bonsal answered, "Yes."  (*Id.* at 12, 26-27).  Reed said that he wanted to called his attorney, Kirby Taylor, but the phone number was in his wallet.  Sergeant Bonsal offered Reed the use of a phone book.  Sergeant Bonsal and Reed stepped outside the interview room.   Reed looked at the phone book and asked about calling someone else.  Sergeant Bonsal testified that Reed never called his attorney and instead asked to call a relative.  (*Id.* at 27).

When Bonsal and Reed returned to the interview room, Bonsal told Reed that it appeared his lawyer's office was closed and if Reed wanted to answer questions, he would have to sign the form.  (Reporter's Record, pp. 28, 36).  Bonsal explained that he did not understand Reed's question, "[c]an I get a lawyer if I want one," to invoke the right to counsel.  Instead, Bonsal understood Reed to be asking whether he had the ability to get a lawyer *if* he decided he wanted one.  Bonsal answered "yes" to that question.  (*Id.* at 28).  After an unsuccessful effort to call a relative, Reed stated that he would answer Bonsal's questions, and he signed the waiver form.  (*Id.* at 28, 30-34).

Sergeant Bonsal testified that he did not notice any bruising on Reed's head.  Reed appeared coherent and understood what he was doing when he waived his *Miranda* rights.  Sergeant Bonsal denied using any force or coercion or making any promises in his conversation with Reed.  (*Id.* at

7

24).  Aside from a stiff back, Reed did not complain of any pain during the interview.  (*Id*. at 25).

Sergeant Bonsal testified that Reed was lucid and carried on a normal conversation.  (*Id*. at 25-26).

A transcript of the videotaped conversation is not in the record.  A review of the videotape itself shows that it is consistent with Sergeant Bonsal's testimony at the suppression hearing.  The videotape shows that Sergeant Bonsal first reviewed the statutory warnings with Reed and instructed him to read aloud from the form.  Reed did so.  He then signed the part indicating that he understood his rights.  Bonsal then directed Reed to the waiver portion.  Reed asked, "can I get a lawyer if I want one?"  The answer was "yes."  Reed said that his lawyer's card was in his wallet at the jail.  Sergeant Bonsal offered Reed the use of a phone book.  They left the room for a short time.  During that time, Sergeant Bonsal and Reed are not visible on the videotape.  The conversation between them outside the video room can be heard, though many of the statements are muffled.  In response to a statement  by Reed, Sergeant Bonsal can be heard saying, "If you want to talk to him before you talk to me, that's up to you."  Reed can then be heard saying, "Well, can I make another phone call first to (unclear)."  Bonsal replied: "We can do that . . . what do you want to do?"  Reed answered "that's fine" as they return to the interview room.  Sergeant Bonsal then said, "I suppose that your lawyer's office is closed.  If you're gonna answer my questions you need to sign here," pointing to the form.  Reed did so.  The interview followed.  Reed did not mention calling a lawyer during the interview.  (State's Exhibit 2).

After viewing the videotaped statement, the trial judge stated:

> I heard what was said, he went to call his lawyer.  He said the lawyer's office is closed and then something about a call, and the police officer said "Well, you can call," and then I couldn't hear the rest of it.  And then they come back in the room and he said, of course, "Well, if you want to talk to me still, you'll have to sign this

> paper.  And later on if you want to call someone to let them know
> where you are, I'll let you make a collect call."

(*Id.* at 36).

Reed did not remember the accident, but did recall that his head was hurting badly.  (*Id.* at 40).  Reed did not think he had all his mental faculties when he was in the police  station after the accident.  Reed acknowledged that the photograph of him at the accident scene did not show that he was bleeding or bruised.  (*Id.* at 50).

Reed testified that he remembered making it clear that he wanted a lawyer.  (*Id.* at 40).  Reed did not, however, recall signing the waiver of the right to counsel.  (Reporter's Record, p. 39).  Nor did he recall saying that he understood his rights.  Nor did he did  recall writing "yes" to answer the question, "do you understand these rights?"  His only information about the waiver form was based on viewing the videotape.  (*Id.* at 41).  When asked if he had indicated on the form that he understood his rights, Reed testified that on the videotape, he saw himself signing the form, but he did not know what form he was signing.  (*Id.* at 42).

Reed testified that he may have told Sergeant Bonsal or another uniformed officer that he wanted a lawyer when he arrived at the police station, but he was not sure if he had asked for a lawyer before the videotaped interview.  (*Id.* at 44).  Reed also testified that he told Sergeant Bonsal he wanted a lawyer.  (*Id.* at 45).  At the suppression hearing, Reed was asked how he could clearly remember telling someone in a police uniform that he wanted a lawyer when his memory of the other events at the police station was so fuzzy.  Reed stated that he knew he wanted a lawyer that day.  (*Id.*).  "It was too–it was after 5:30, he told me the lawyer's office was probably closed," and that was his "reason for not really pressing the issue."  (*Id.*).

Reed testified that he knew from watching the videotape that he had agreed to answer Sergeant Bonsal's questions.  (*Id*. at 46).  Though he could not remember Sergeant Bonsal's exact words, Reed testified that Sergeant Bonsal made it seem that it would be better for Reed to talk with him before getting a lawyer.  (*Id*. at 47-48).  Reed did not remember whether it was Sergeant Bonsal's "body language" or something else that made Reed feel that he had to answer Sergeant Bonsal's questions.  (*Id*. at 50).

The trial court stated that the videotape showed that Reed had read the bottom of the waiver form, looked up, and asked, "can I get a lawyer if I want one?"  (*Id*. at 55).  The trial court concluded that Reed had clearly read the form, understood it, and asked his question based on its contents.  On returning to the interview room, Reed signed the waiver form.  (*Id*. at 55).

The trial court made the following relevant findings and conclusions:

> 4.  The statement was recorded and offered into evidence as State's Exhibit No. 2. This videotape recording reflects that Carl Wayne Reed understood each and every right as explained to him by Kirk Bonsal.  It further reflects Carl Wayne Reed's voluntary waiver of his rights and his agreement to give a statement to Kirk Bonsal. The video tape also reflects that Carl Wayne Reed was not mistreated, beaten, coerced, or threatened into giving his statement.

> 5.  Kirk Bonsal followed all procedural requirements prior to questioning Carl Wayne Reed about the case.

> 6.  Carl Wayne Reed's statement, State's exhibit No. 2, made by Reed at the police station, was made freely and voluntarily without compulsion or persuasion as prescribed by the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure and is therefore admissible in evidence in trial against him.

(Clerk's Record, Vol. I, pp. 46-49).

## IV.    The Applicable Legal Standards

Reed's § 2255 motion is analyzed under the federal habeas statutes as amended by the
Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2254; *Woods v. Cockrell*, 307
F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997).  Subsections
2254(d)(1) and (2) of the AEDPA set out the standards of review for questions of fact, questions
of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An
adjudication on the merits "is a term of art that refers to whether a court's disposition of the case
is substantive, as opposed to procedural."  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides as follows, in pertinent part:

(d)  An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court
of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

(e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by
a person in custody pursuant to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to be correct.  The applicant
shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is
reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or
involved an unreasonable application of clearly established Federal law, as determined by the
Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).  A state-

court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).

Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain,* 246 F.3d 471, 475 (5th Cir. 2001). A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact but also to the implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) overrides the ordinary rule

that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

**V.    Analysis**

Reed argues that his question, "I can get a lawyer if I want one?" was a request for counsel. His § 2255 motion is based on the argument that the continued questions without a lawyer present violated his *Miranda* rights.  Reed asserts that after he asked Sergeant Bonsal whether he could get an attorney if he wanted one, and Bonsal answered "yes," Reed then said that he did want to call his lawyer but the number was in his wallet.  Reed states that he was offered a telephone book to look up the number.  (*Id*. at 13).  Reed next asked if he could first call his father and then his lawyer. Sergeant Bonsal responded, "we can do that too, what do you want to do?"  Bonsal then told Reed, "your lawyer's office is closed.  If you're gonna answer questions you need to sign here," referring to the waiver of rights form.  Reed then stated, "I'm gonna answer your questions."  Reed argues that there was no evidence that his lawyer's office was in fact closed when Sergeant Bonsal said it was. (Docket Entry No. 9, Amended Petition for a Writ of Habeas Corpus, p. 3).

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him.  *Id*. at 444-45.  A person may waive these rights so long as the waiver is knowing and voluntary.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  During custodial interrogation, "the right to have counsel present . . . is indispensable to the protection of the Fifth Amendment privilege."

13

*Id.* at 469.  When a suspect declares that he wants an attorney, "the interrogation must cease until an attorney is present."  *Miranda,* 384 U.S. at 474; *see also Edwards v. Arizona*, 451 U.S. 477, 484 (1981).  Once "an accused has invoked his right to have counsel present during custodial interrogation . . . [he] is not subject to further interrogation by the authorities until counsel has been made available," unless he initiates the contact.  *Id.* at 484-485.  The *Edwards* rule is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).  A statement made after asserting *Miranda* rights is presumed to be involuntary, "even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards."  *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).  This prophylactic rule "protect[s] a suspect's voluntary choice not to speak outside his lawyer's presence."  *Texas v. Cobb*, 532 U.S. 162, 173 (2001) (Kennedy, J., concurring).  Police officers must scrupulously honor an unambiguous invocation of these rights, *Miranda*, 384 U.S. at 473-74.  Once the right to counsel is invoked, an officer may not make further attempts to elicit statements unless the suspect initiates further communication.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

Ambiguous assertions of the right to counsel are not enough to require police to stop interrogation.  *See Barnes v. Johnson*, 160 F.3d 218, 224(5th Cir. 1998) (finding no invocation of the right to counsel in light of the suspect's prior statements and the fact that he initiated discussion with police after he heard and waived his *Miranda* rights).  The test is whether, viewed objectively, a reasonable police officer in the circumstances would understand the request to be an invocation of the right to a lawyer.  *Davis v. United States*, 512 U.S. 452, 458-59 (1994) (holding that the suspect's statement, "Maybe I should talk to a lawyer," said over an hour and a half into a custodial

interrogation, after he had previously waived his *Miranda* rights, was an ambiguous assertion of the right to counsel).  The question is whether the suspect "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 459.  The Supreme Court has expressly declined to "require law enforcement officers to cease all questioning" when a suspect makes an ambiguous or equivocal reference to an attorney. *Id*. at 459-460.  Once a suspect validly waives *Miranda* rights, police questioning may continue until the suspect "clearly requests an attorney." *Id*. at 461.  When faced with an ambiguous invocation, an interrogator was not required to ask clarifying questions, but  it will "often be good police practice" to do so. *Id*.

A suspect's request for advice on whether to obtain an attorney is not a clear invocation of the right to counsel. *See United States v. Posada-Rios,* 158 F.3d 832, 867 (5th Cir. 1998) (holding that a suspect's statement that she "might have to get a lawyer then, huh?" was not a clear request); *see also Davis,* 512 U.S. at 462 ("Maybe I should talk to a lawyer" was not a clear request).  A suspect's inquiry into how he can obtain an attorney is ambiguous. *See United States v. Cruz,* 22 F.3d 96, 97 (5th Cir. 1994) (holding that a suspect's statement that he was a "working man" who "couldn't afford an attorney" was not a clear request); *see also Lord v. Duckworth,* 29 F.3d 1216, 1221 (7th Cir. 1994) (ruling that when a suspect asks, "I can't afford a lawyer but is there anyway I can get one?," that is not a "clear" request for counsel).  A suspect does not make a clear request for counsel when he asks a police officer how long it would take to get an attorney. *See United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir. 1990).  While a suspect need not "speak with the discrimination of an Oxford don," he must nevertheless clearly articulate his desire to have an

attorney present. *Soffar v. Cockrell,* 300 F.3d 588, 595 (5th Cir. 2002) (citing *Davis,* 512 U.S. at

459).

The state appellate court considered and rejected Reed's Fifth Amendment claim, reasoning

as follows:

> Appellant argues that he made a clear request to call his attorney,
> thus invoking his Fifth Amendment right to counsel, and that all
> questioning should have stopped until his attorney arrived.  To
> support his argument, appellant relies on the Fifth Circuit's decision
> in *Silva v. Estelle*, 672 F.2d 457 (5th Cir. 1982).  The State counters
> that because *Silva* is a Fifth Circuit case its precedent is not binding
> on this court.  *See Mosley v. State*, 983 S.W.2d 249, 256 n.13 (Tex.
> Crim. App. 1998).  We agree with the State, but even if *Silva* were
> binding, the facts of *Silva* and the instant case are distinguishable.  In
> *Silva*, the Fifth Circuit held that the defendant unequivocally invoked
> his Fifth Amendment right to counsel when he told the judge at his
> arraignment that he wanted to use the telephone to call his lawyer.
> *Silva*, 672 F.2d at 458.  Thus, the police violated the defendant's right
> to counsel when they approached him an hour later, before he had
> had an opportunity to contact his lawyer, and secured his written
> confession.  *Id*. at 458-59.
>
> Here, appellant did not make an unequivocal request to call his
> lawyer, but simply asked whether he could get a lawyer if he wanted
> one.  This statement was not a clear invocation of the right to counsel
> because it did not indicate that appellant wanted to speak to his
> attorney or that he wanted his attorney to be present during
> questioning.  *See Lucas*, 791 S.W.2d at 45.  Thus, Sergeant Bonsal
> was free to continue questioning appellant, but only to ascertain the
> exact meaning of this statement.  *See id*. at 46.  This is what Sergeant
> Bonsal did, and nothing on the videotape indicates that Sergeant
> Bonsal discouraged appellant from calling his attorney, questioned
> appellant about the robbery until after appellant signed the waiver, or
> said anything except for the purpose of determining what appellant
> wanted to do.  In fact, Sergeant Bonsal told appellant that he could
> talk to his attorney before he talked to him (Sergeant Bonsal), and he
> specifically asked appellant what he wanted to do.   Although
> appellant's exact response on the videotape is indistinguishable,
> appellant responded as he returned to his seat.  When told that he
> would have to sign a waiver before answering Sergeant Bonsal's
> questions, he interjected, "I'm gonna answer your questions."

Appellant then signed the waiver.  Sergeant Bonsal was, therefore, entitled to continue the interrogation.

No evidence indicates that the trial court abused its discretion in concluding that (1) appellant asked if he could get a lawyer if he wanted; (2) appellant waived his *Miranda* rights; and (3) appellant was not beaten, coerced, or threatened into doing so.  *See Villarreal*, 935 S.W.2d at 138.  Thus, appellant's statement was not obtained in violation of his Fifth Amendment right to counsel, and the trial court did not abuse its discretion in denying appellant's motion to suppress.

The First Court of Appeals affirmed Reed's conviction.  *Reed v. State,* No. 01-05-00619-CR, 227 S.W.3d 111, 116-17 (Tex. App. -- Houston [1st Dist.] 2006, pet. ref'd).  The appellate court noted that the trial court did not make a specific finding that Reed did not invoke his right to counsel, but such a finding was implicit in the conclusion that the statement was admissible at trial.  The Texas Court of Criminal Appeals refused Reed's petition for discretionary review. Because the Texas Court of Criminal Appeals did not issue an opinion, this federal habeas court may "look through" to the last reasoned state decision, which is the intermediate appellate court's opinion.  *Ylst v. Nunnemaker*, 111 S. Ct. 2590, 2594 (1991).  The First Court of Appeals found that Reed did not make an unequivocal request to call his lawyer but simply asked whether he could get a lawyer if he wanted one.  The court found that Reed's statement was not obtained in violation of his Fifth Amendment right to counsel and that the trial court did not abuse its discretion in denying Reed's motion to suppress.  Reed offers no evidence to rebut the correctness of these findings other than his own testimony at the suppression hearing.  But Reed's testimony and the statements he made on the videotape support the Texas trial court and intermediate appellate court's decisions. Reed testified at the state court suppression hearing that soon after he asked if he could get a lawyer if he wanted one, Sergeant Bonsal went with him to use a telephone outside the interview room.  The videotape captured some of their conversation outside the room.  Sergeant Bonsal can be heard to

17

say, "If you wanna talk to him before you talk to me that's up to you." Reed then says, "Well, can I make another phone call first?" After more muffled discussion, Sergeant Bonsal asks, "What do you want to do?" Sergeant Bonsal and Reed then walk back into the interview room. Bonsal refers to the office being closed and reiterates that if Reed is going to answer questions, he needs to sign the waiver form. Reed then says, "I'm gonna answer your questions." The videotape shows Reed signing the waiver form he had previously read.

The question, "I can get a lawyer if I want one?" uttered in the circumstances of this case was at most an ambiguous question and id not require Bonsal to stop questioning. The record shows that Sergeant Bonsal followed what the Supreme Court has described as "good police practice." When Reed asked a question about counsel that did not clearly ask for a lawyer, Sergeant Bonsal asked Reed what he wanted to do and left it up to him to decide. After further discussion, during which interrogation did not take place, Reed then indicated he would answer Sergeant Bonsal's questions with no lawyer present. *See Barnes v. Johnson*, 160 F.3d 218, 225 (5th Cir. 1998). Sergeant Bonsal testified that Reed did not mention having an attorney other than the one question he was shown asking on the videotape.

Reed testified at the suppression hearing that at some point before the videotape began, he asked some uniformed officer for an attorney. Reed testified that although he was unable to remember most of what happened while he was in the police station, he had one clear recollection — that he had asked for a lawyer. The trial court did not find Reed's testimony credible. In light of *Davis* and this record, in which an ambiguous statement was made and noncoercive clarifying questions revealed no intent to invoke the right to counsel, the trial court's admission of the videotaped statement is not contrary to "clearly established Federal law, as determined by the

18

Supreme Court." 28 U.S.C.A. § 2254(d)(1).  The record provides no basis for this court to decide

that the state courts unreasonably applied clearly established federal law in concluding that Reed's

confession was admissible.  *See Barnes*, 160 F.3d at 224; *Soffar*, 300 F.3d at 594, 595 (discussing

the "fairly strict" standards for evaluating claims in habeas petitions that the rights to silence and/or

counsel were invoked); 28 U.S.C. § 2254(d)(1).  Reed is not entitled to federal habeas corpus relief.

## VI.     Conclusion

        The respondent's motion for summary judgment, (Docket Entry No. 16), is granted.  Reed's

petition for a writ of habeas corpus is denied.  Final judgment is entered by separate order.  Any

remaining pending motions are denied as moot.  Under the AEDPA, a petitioner must obtain a COA

before appealing the district court's denial of habeas relief.  28 U.S.C. § 2253(c)(2).  "This is a

jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge

issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'"

*Miller-El v. Cockrell*, 537 U.S. 322 (2003)(citing 28 U.S.C. § 2253(c)(1)).  A COA will be granted

only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2).  To make such a showing, a petitioner "must demonstrate that the issues are debatable

among jurists of reason; that a court could resolve the issues [in a different manner]; or that the

questions are adequate to deserve encouragement to proceed further."  *Barefoot v. Estelle*, 463 U.S.

880, 893 n.4 (1983) (citation and internal quotation marks omitted).  Reed has not made "a substantial showing of the denial of a constitutional right."  A certificate of appealability will not issue.

SIGNED on September 14, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge